**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**

**Grand Jury Sworn in on July 1, 2026**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Criminal No. 26-** |
| **v.** | **Grand Jury Original** |
| **ANTWON SOCKWELL**<br>**KEITH PACKER,**<br>**and**<br>**TIERRA LOVE**<br>**Defendants.** | **VIOLATIONS:**<br><br>**18 U.S.C. § 371 (Conspiracy);**<br><br>**18 U.S.C. §§ 48(a)(1), 2 (Animal Crushing, Aiding and Abetting and Causing an Act to be Done);**<br><br>**18 U.S.C. §§ 875(d), 2 (Interstate Communications with the Intent to Extort, Aiding and Abetting and Causing an Act to be Done);**<br><br>**18 U.S.C. §§ 2261A(1)(A)(iv), 2 (Stalking, Aiding and Abetting and Causing an Act to be Done);**<br><br>**18 U.S.C. §§ 924(c), 2 (Using, Carrying, or Possessing a Firearm During and in Relation to a Crime of Violence, Causing an Act to be Done)**<br><br>**FORFEITURE ALLEGATION:**<br><br>**18 U.S.C. § 924(d)(1), 28 U.S.C. § 2461(c)** |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates and times stated below:

## INTRODUCTION

### The Defendants and the Dispute

1. In or about July 2026, KEITH PACKER and TIERRA LOVE were in a long-term relationship and had children together. In July 2026, neither PACKER nor LOVE had a permanent residence but stayed with various relatives in Maryland.

2. In or about July 2026, ANTWON SOCKWELL, who goes by the nickname "TWAN" and/or "TWON," was a resident of the District of Columbia. SOCKWELL and PACKER were long-term friends. LOVE was also well acquainted with SOCKWELL.

3. VICTIM 1 was a resident of Suitland, Maryland, and LOVE's relative. VICTIM 1 lived with another relative, WITNESS 1. From time to time, LOVE stayed at the same residence as VICTIM 1 and WITNESS 1.

4. On or about July 8, 2026, a dispute erupted between LOVE and VICTIM 1 over a vehicle owned by VICTIM 1, which VICTIM 1 had allowed LOVE to use. On that date, VICTIM 1 retook possession of the keys to the vehicle from LOVE and removed LOVE's belongings from the vehicle. VICTIM 1 refused to allow LOVE to use the vehicle until she took care of unpaid traffic tickets relating to LOVE's use of the vehicle.

5. VICTIM 1 was the owner of a Siberian Husky dog named "Ice" who resided with VICTIM 1 and WITNESS 1 at a residence in Suitland, Maryland.

6. On July 11, 2026, at approximately 1:28 p.m., Washington, D.C. Metropolitan Police Department ("MPD") officers learned that ShotSpotter had detected a gunshot in an alley located on the 4000 block of D Street SE, Washington, D.C. MPD officers responded to that alley, where they located a deceased Siberian Husky which appeared to have a gunshot wound to the head.

7. An MPD detective responded to the scene and observed the deceased dog along with a single 9mm shell casing located nearby. A D.C. Humane Rescue Alliance officer also responded and used a chip reader, which revealed that the dog's registered owner was VICTIM 1.

8. On or about September 11, 2026, a search warrant was conducted on SOCKWELL's residence in the District of Columbia. Law enforcement officers recovered a 9mm Smith & Wesson firearm as well as ammunition. SOCKWELL admitted to law enforcement that after "Ice" was shot, he stored the 9mm firearm used to shoot "Ice" in his apartment.

**COUNT ONE**
**(Conspiracy)**

9. Paragraphs 1 through 8 are incorporated herein.

10. From July 8, 2026, and continuing through September 11, 2026, in the District of Columbia and elsewhere, the defendants,

KEITH PACKER, TIERRA LOVE, and ANTWON SOCKWELL

did knowingly and willfully combine, conspire, confederate, and agree with each other to commit certain offenses against the United States, that is:

a. Animal Crushing – by knowingly and purposely engaging in animal crushing, in or affecting interstate commerce, by subjecting a dog named "Ice" to serious bodily injury, namely bodily injury that involved a substantial risk of death, and did, in fact, cause the death of "Ice," by shooting the dog in the head with a firearm, in violation of 18 U.S.C. § 48, and

b. Interstate Communications with the Intent to Extort – by knowingly and with the intent to extort a thing of value, transmitting in interstate and foreign commerce from the District of Columbia to Maryland, text messages, phone communications, and in-person communications containing threats to injure a dog named "Ice," the

property of VICTIM 1, the recipient of the threats, if VICTIM 1 did not provide a vehicle and the keys to a vehicle, in violation of 18 U.S.C. § 875(d).

**Goal of the Conspiracy and Purpose of the Scheme**

11. It was the goal of the conspiracy and purpose for PACKER, LOVE, and SOCKWELL to gain control over a vehicle by threatening to subject VICTIM 1 and the dog "Ice" to serious bodily injury, if VICTIM 1 did not turn over a vehicle and keys to a vehicle to them.

**Manner and Means**

12. The manner and means by which PACKER, LOVE, and SOCKWELL sought to accomplish the goals of the conspiracy, included, among other things, the following:

a. On July 8, 2026, at approximately 1:53 p.m., PACKER called LOVE. LOVE told PACKER during the call, "I said since you wanna take my motherf***ing keys, I'm gonna take your motherf***ing dog."

b. On July 8, 2026, at approximately 6:35 p.m., PACKER called LOVE again, who said: "TWAN could do it and I can text him when [VICTIM 1] go in the room and close his door [. . . .]. So, I think when I do all, yeah, I think I'm gonna just let TWAN chill in the car on the street and then I'll text him the signal and I'll tell him to mask up, walk around and the, you know he already gonna have an all-black mask up and come and do this thing."

c. On July 10, 2026, at approximately 1:16 p.m., INDIVIDUAL 1 called SOCKWELL. INDIVIDUAL 1 and SOCKWELL discussed the dispute over the vehicle between LOVE and VICTIM 1. SOCKWELL recounted the plan devised by PACKER and LOVE was to "post a n****. We're gonna talk to him, see what

it is. If not man, you [SOCKWELL] gonna L him out. I'm gonna go in his pocket and take the keys and we just gonna knock him out."

d. It was part of the conspiracy that PACKER, LOVE, and SOCKWELL abducted VICTIM 1's Siberian Husky, "Ice."

e. The conspirators used cellular telephones to communicate threats to VICTIM 1.

f. The conspirators used cellular telephones to communicate with each other.

g. The conspirators used a dark-colored Nissan Altima to transport "Ice" and to move around Washington, D.C. and Maryland.

h. The conspirators used a 9mm firearm to shoot and kill "Ice."

**Overt Acts in Furtherance of the Conspiracy**

13. In furtherance of the conspiracy and to effect the objects thereof, PACKER, LOVE, and SOCKWELL, committed and caused to be committed in the District of Columbia and elsewhere:

a. On or about July 11, 2026, PACKER and LOVE drove to Maryland and stole a Siberian Husky named "Ice" from VICTIM 1's residence.

b. On or about July 11, 2026, after participating in the theft of "Ice," LOVE told members of her family that she had not seen "Ice."

c. On or about July 11, 2026, PACKER sent VICTIM 1 a text message: "I heard they got your heart man. I heard it ain't coming back."

d. Approximately an hour-and-a-half later on July 11, 2026, PACKER sent the VICTIM another text message: "Whenever you're ready to bring my keys in [sic] my title, let me know cause other than that everybody gonna be missing something[.]"

e. At approximately 11:50 a.m., PACKER called VICTIM 1, stating something to the effect of "you know what's up" before terminating the call.

f. At approximately 12:20 p.m., PACKER called VICTIM 1 again and told VICTIM 1 words to the effect of, "Whenever you ready to give us the key and title let me know." VICTIM 1 told PACKER words to the effect of, "Whenever you ready to bring my dog, I'm ready." PACKER then stated he was on his way to the residence and told VICTIM 1 to take the tags off the vehicle before the meeting.

g. At approximately 1:15 p.m., PACKER, LOVE, and SOCKWELL traveled from the District of Columbia and arrived at VICTIM 1's residence in Maryland in a dark gray Nissan Altima sedan. PACKER was driving, LOVE was in the passenger seat, and SOCKWELL was in a back seat of the Nissan.

h. VICTIM 1 spoke with SOCKWELL about "Ice," who was not in the Nissan. SOCKWELL asked VICTIM 1 for the keys to the vehicle that were the subject of the dispute. In addition, SOCKWELL told VICTIM 1 that the dog was safe.

i. After VICTIM 1 did not turn over the keys to the vehicle because "Ice" was not in the vehicle, PACKER tried to hit VICTIM 1 with the vehicle.

j. PACKER, LOVE, and SOCKWELL drove from Maryland to the District of Columbia, arriving at an area near the alley in the 4000 block of D Street SE and where "Ice" was tied to a fence.

k. At around 1:23 p.m., PACKER sent VICTIM 1 the following text message: "All dawgs [sic] go to," and "Anything you wanna say last?"

l. At or around 1:28 p.m. on July 11, 2026, "Ice" was shot in the head with a 9mm firearm by one of the conspirators and died in the alley.

m. After Ice's shooting, SOCKWELL kept the 9mm firearm in his apartment in the District of Columbia.

**(Conspiracy, in violation of Title 18, United States Code, Section 371)**

**COUNT TWO**
**(Animal Crushing)**

14. Paragraphs 1 through 8 and 11 through 13 are re-alleged herein.

15. On or about July 11, 2026, within the District of Columbia and elsewhere, the defendants,

KEITH PACKER, TIERRA LOVE, and ANTWON SOCKWELL

purposely subjected one live Siberian Husky dog named "Ice" to serious bodily injury in or affecting interstate commerce, namely bodily injury that involved a substantial risk of death, by shooting the dog in the head with a firearm.

**(Animal Crushing, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 48(a)(1) and 2)**

**COUNT THREE**
**(Interstate Communications with the Intent to Extort)**

16. Paragraphs 1 through 8 and 11 through 13 are re-alleged herein.

17. On or between July 8, 2026, and July 11, 2026, in the District of Columbia and elsewhere, the defendants

KEITH PACKER, TIERRA LOVE, and ANTWON SOCKWELL

knowingly and with the intent to extort a thing of value, transmitted in interstate and foreign commerce between the District of Columbia to Maryland, text messages, phone communications, and in-person communications containing threats to injure a dog named "Ice," the property of

VICTIM 1, the recipient of the threats, if VICTIM 1 did not provide a vehicle and the keys to a vehicle.

**(Interstate Communications with the Intent to Extort, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 875(d) and 2)**

**COUNT FOUR**
**(Stalking)**

18. Paragraphs 1 through 8 and 11 through 13 are re-alleged herein.

19. On or about July 11, 2026, in the District of Columbia and elsewhere, the defendants

KEITH PACKER, TIERRA LOVE, and ANTWON SOCKWELL

traveled in interstate commerce from the District of Columbia to Maryland with the intent to intimidate another person, VICTIM 1, and in the course of and as a result of such travel placed VICTIM 1 in reasonable fear of the death of, or serious bodily injury to, VICTIM 1's Siberian Husky dog "Ice."

**(Stalking, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 2261A(1)(A)(iv) and 2)**

**COUNT FIVE**
**(Using, Carrying, or Possessing a Firearm During and in Relation to a Crime of Violence)**

20. Paragraphs 1 through 8 and 11 through 13 are re-alleged herein.

21. On or about July 11, 2026, in the District of Columbia, the defendants,

KEITH PACKER and ANTWON SOCKWELL

did knowingly carry and use a firearm, that is, a 9mm Smith & Wesson M&P 9 Shield firearm, and that firearm discharged during and in relation to a crime of violence for which the defendants may be prosecuted in a court of the United States, that is, Animal Crushing; in violation of Title 18, United States Code, Sections 48 and 2.

**(Using, Carrying, or Possessing a Firearm During and in Relation to a Crime of Violence, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 924(c) and 2)**

**FORFEITURE ALLEGATION**

22. Upon conviction of any of the offenses alleged in Count Five of the Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), any property involved in or used in any knowing violation of the offense. Specifically, the United States will seek the forfeiture of the following specific property: a 9mm Smith & Wesson M&P 9 Shield firearm and ammunition.

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 924(d)(1) and 28 United States Code, Section 2461(c))**

**A TRUE BILL:**

**FOREPERSON**

JEANINE FERRIS PIRRO
United States Attorney

By:

John W. Borchert
Chief
Fraud, Public Corruption, and Civil Rights Section